Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| STEVEN SANABRIA OJEDA<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN<br><br>Recurrido | KLRA202400327 | *Revisión* Administrativa Procedente de la División de Remedios Administrativos del DCR<br><br>Sobre: Remedio Administrativo Núm.: ICG-500-2024 |
|---|---|---|

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Salgado Schwarz y el Juez Ronda Del Toro.

Rodríguez Casillas, juez ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 21 octubre de 2024.

Comparece ante nos el Sr. Steven Sanabria Ojeda (señor Sanabria Ojeda o Recurrente), para que revoquemos la *Resolución* emitida el 23 de mayo de 2024, por el Departamento de Corrección y Rehabilitación (DCR o Foro Administrativo), la cual determinó que es inelegible para recibir las terapias de la Sección de Programa de Evaluación y Asesoramiento (SPEA).[1]

Examinado el recurso, resolvemos **confirmar** la *Resolución* recurrida. Veamos.

**-I-**

El **28 de octubre de 2022** el Comité de Clasificación y Tratamiento (CCT) expresó al Recurrente que cumple una sentencia elevada y en el 2040 cumpliría el mínimo para beneficiarse de la Junta de Libertad Bajo Palabra (JLBP). Indicó que en el 11 de agosto

---

[1] Apéndice de la Revisión Judicial, Anejo VI, págs. 10-11.

de 2011 fue referido a las Terapias de Aprendiendo a vivir sin violencia.[2]

Posteriormente, el **10 de marzo de 2024** el Recurrente presentó una *Solicitud de Remedio Administrativo* ante la División de Remedios Administrativos (División-RA). Allí, solicitó que se le brindara las terapias de la SPEA. Añadió que desde el 11 de agosto de 2011 había sido evaluado por el CCT y todavía estaba pendiente para ser integrado. Finalizó con una nota denunciando que el 8 de marzo de 2024 había presentado una querella sin que hasta esa fecha se le brindara una respuesta. El **18 de abril de 2024** la División-RA le notificó al Recurrente el recibo de la *Solicitud de Remedio Administrativo*.[3]

El **29 de abril de 2024** la División-RA emitió la *Respuesta al Miembro de la Población Correccional,* la cual notificó **1 de mayo de 2024**, y fue recibida por el Recurrente el **2 de mayo de 2024**. Mediante esta, se le informó que estaban a la espera de que el Supervisor del Programa SPEA se pronunciara al respecto, porque todavía le faltaban doce (12) años para cumplir el mínimo de la sentencia.[4]

El **3 de mayo de 2024** el Recurrente presentó una *Solicitud de Reconsideración,* la cual fue recibida el **8 de mayo de 2024** por la División-RA. Allí, expresó no estar de acuerdo con la respuesta porque no resuelve su solicitud de remedio.[5]

Así las cosas, el **23 de mayo de 2024** la División-RA emitió una *Respuesta de Reconsideración al Miembro de la Población Correccional,* en la que denegó la petición de reconsideración. En síntesis, le expresó al señor Sanabria Ojeda que para el servicio del Programa de Evaluación SPEA se van seleccionando a los

---

[2] *Íd.*, Anejo I, pág. 1.
[3] Apéndice de la Revisión Judicial, Anejo III, pág. 6.
[4] *Íd.*, Anejo IV, págs. 7-8.
[5] *Íd.*, Anejo V, pág. 9.

confinados que les resten un año para cumplir su mínimo de sentencia. En ese sentido, se le indicó al Recurrente que se encuentra en espera para ser referido a los Programas y a la JLBP ya que el mínimo de su sentencia se cumpliría el 2036 y el máximo para el 2134.[6]

Inconforme, el **21 de junio de 2024** el señor Sanabria Ojeda acudió ante nos e imputó la comisión de los siguientes errores:

> *PRIMER ERROR: Erró el DCR al no basar su determinación en evidencia sustancial, erró en la aplicación e interpretación de las leyes y los reglamentos que se le ha encomendado administrar, lesionando así los derechos fundamentales e ilegalmente habiendo emitido una determinación carente de base racional y contraria a derecho.*

> *SEGUNDO ERROR: Erró el DCR al no conceder al recurrente la oportunidad de iniciar el procedimiento para éste conocer si en efecto podía participar del Programa de Pase inicial sin custodia, aduciendo que el confinado tiene que haber cumplido con las terapias de [Aprendiendo a vivir sin violencia] SPEA—entre otras—y cuando el recurrente las solicita, le deniegan el poder beneficiarse, ignorando así que su actuación supone un grave perjuicio para el recurrente, en tanto interrumpió el proceso de Rehabilitación emprendido por éste, proceso que constituye la meta principal del sistema penal según la Carta Magna.*

> *TERCER ERROR: Erró el DCR al incumplir con el mandato Constitucional de Rehabilitación al utilizar como único factor en una determinación de la DRA que por no tener las terapias del SPEA, no se podía beneficiar de dicho Programa de Pases cuando es la misma Agencia quien viene obligada a integrar y evaluar al Sr. Sanabria para que este se pueda beneficiar, máxime cuando ya había sido referido en múltiples ocasiones.*

> *CUARTO ERROR: Erró el DPR al no brindar el Servicio del Programa de Evaluación y Asesoramiento (SPEA) al recurrente, impidiendo y/o coartando la Política Pública de la Agencia, Art. VI Sec. 19 de la Constitución del Estado Libre Asociado de Puerto Rico, LPRA Tomo I, ya que a través de dichas terapias se viabiliza y promueve la Rehabilitación del confinado.*

Después de varios trámites procesales, el **23 de agosto de 2024** el DCR presentó un *Escrito en Cumplimiento de Resolución.*

Con la comparecencia de ambas partes, procedemos a resolver.

---

[6] Apéndice de la Revisión Judicial, Anejo VI, págs. 10-11.

**-II-**

**A.**

Sabido es que las actuaciones de las autoridades correccionales gozan de gran discreción y merecen la deferencia de los tribunales ante la revisión judicial. [7]

Esa deferencia se extiende a *"la adopción y puesta en vigor de sus reglamentos, pues es la entidad con la encomienda de preservar el orden en las instituciones carcelarias"*.[8]

Por ello, nuestra la función revisora —con respecto a las determinaciones del DCR— como de cualquier otra agencia, es de carácter limitado.[9] Siendo así, la revisión de las decisiones finales de los organismos y agencias administrativas se tramitará de conformidad con las disposiciones de la Ley de Procedimiento Administrativo Uniforme.[10]

En fin, nuestra función se circunscribe a considerar si la determinación de la agencia es razonable, ya que se persigue evitar que el tribunal revisor sustituya el criterio de la agencia por el suyo.[11]

**B.**

El Artículo VI, Sección 19 de la Constitución de Puerto Rico expresamente establece la política púbica del Estado de *"reglamentar las instituciones penales para que sirvan a sus propósitos en forma efectiva y propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social"*.[12]

---

[7] *Cruz Negrón v. Administración de Corrección*, 164 DPR 341 (2005) citado *Pérez López v. Depto. de Corrección*, 208 DPR 656, 674 (2022).

[8] *Álamo Romero v. Adm. de Corrección*, 175 DPR 314, 334 (2009) citado en *Pérez López v. Departamento de Corrección, supra*, en la pág. 687.

[9] *López Borges v. Adm. Corrección*, 185 DPR 603 (2012).

[10] Ley Núm. 38 de 30 de junio de 2017, según enmendada, mejor conocida como *"Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico"*, 3 LPRA sec. 9601, *et seq.*

[11] *Hernández Álvarez v. Centro Unido*, 168 DPR 592, 616 (2006); *Otero v. Toyota*, 163 DPR 716, 728 (2005).

[12] Artículo VI, Sec. 19, Constitución del Estado Libre Asociado, LPRA, Tomo 1.

Así, la Asamblea Legislativa de Puerto Rico aprobó el Plan de Reorganización Número 2 del Departamento de Corrección y Rehabilitación de 2011 (Plan 2), que fue creado al amparo de la Ley de Reorganización y Modernización de la Rama Ejecutiva del Gobierno de Puerto Rico de 2009, Ley 182-2009, que expone:

> *"[l]a política pública del Gobierno de Puerto Rico a través de la creación de un sistema integrado de seguridad y administración correccional donde las funciones y deberes se armonicen en un proceso facilitador a la imposición de penas y medidas de seguridad, así como a la custodia de ciudadanos que han sido encontrados incursos en la comisión de un delito o falta y que establezcan procesos de rehabilitación moral y social del miembro de la población correccional o transgresor, a fin de fomentar su reincorporación a la sociedad".[13]*

Por su parte el Artículo 7, inciso (aa) del precitado Plan 2 le confirió autoridad al *DCR* para:

> *"[a]doptar, establecer, desarrollar, enmendar, derogar e implementar reglas, reglamentos, órdenes, manuales, normas y procedimientos para el funcionamiento efectivo del Departamento y de los organismos bajo su jurisdicción, a los fines de regir la seguridad, la disciplina interna y la conducta de funcionarios, empleados y de la clientela, así como los programas y servicios".[14]*

En cumplimiento con el precitado mandato, el DCR adoptó el Reglamento Número 8583 de 4 de mayo de 2015 para atender las solicitudes de remedios de los confinados, conocido como el _Reglamento para Atender las Solicitudes de Remedios Administrativos Radicadas por los Miembros de la Población Correccional, Reglamento 8583,_ (Reglamento 8583).[15] En este, se establece el procedimiento para atender las solicitudes de remedios administrativos que presentan los confinados.

El Reglamento 8583 se promulga en virtud de la Ley Núm. 96-2476 conocida como _Civil Rights of Institutionalized Person Act_

---

[13] Plan de Reorganización Número 2 del DCR de 2011, 3 LPRA Ap. XVIII, Art. 2.
[14] 3 LPRA Ap. XVIII, Art. 7.
[15] *Reglamento para Atender las Solicitudes de Remedios Administrativos Radicadas por los Miembros de la Población Correccional,* Reglamento Núm. 8583, Departamento de Estado, 4 de mayo de 2015.

aprobada por el Congreso de los Estados Unidos el 23 de mayo de 1980 y extensiva a Puerto Rico por disposición de la propia ley federal.[16]

Al amparo del Reglamento 8583, el DCR tiene jurisdicción, a través de su *División de Remedios Administrativos*, para —entre otros asuntos— atender aquellas solicitudes de remedio presentadas por un confinado que estén relacionadas con actos o incidentes que afecten su bienestar físico o mental, su seguridad personal o su plan institucional.[17]

Conforme a las definiciones del Reglamento 8583, una solicitud de remedio se refiere a aquélla presentada por escrito por un miembro de la población correccional debido a una situación, relacionada a su confinamiento, que afecte su calidad de vida y seguridad.[18]

Es decir, el objetivo principal del Reglamento 8583 es ofrecerle a un confinado la alternativa de que un organismo administrativo atienda sus solicitudes de remedio de primera mano, de modo que se reduzca la radicación de pleitos en los tribunales por esa razón. Ello es así, toda vez, que la propia agencia en la cual se encuentra el confinado, debe ser el mejor ente para atender sus necesidades.

**-III-**

En síntesis, el Recurrente plantea que erró el Foro Administrativo al no brindarle el servicio del Programa de Evaluación SPEA. Además, aduce que erró el DCR al no basar su determinación en evidencia sustancial, al incumplir con su mandato constitucional de rehabilitación y al no concederle la oportunidad de iniciar el procedimiento para este conocer si podía participar del

---

[16] 42 USC 1997 *et seq.*
[17] Reglamento 8583, Regla VI-Jurisdicción, 1 a.
[18] Reglamento 8583, Regla IV-Definiciones. Núm. 24.

Programa de Pase inicial sin custodia y que para ello tiene que haber cumplido las terapias del SPEA. Al estar íntimamente relacionados los errores señalados discutiremos los mismos en conjunto.

Surge del expediente que el DCR le otorga prioridad a los miembros de la población correccional que estén más próximos a cumplir el mínimo de sentencia para recibir las terapias del SPEA.

En este caso, el Recurrente tiene una sentencia extensa por la comisión del delito de Asesinato en Primer Grado y otros delitos. En específico, al señor Sanabria Ojeda le quedan doce (12) años para cumplir con el mínimo de sentencia requerido para participar de los programas de pases. Es decir, el Foro Administrativo concluyó que el señor Sanabria Ojeda le resta mucho tiempo para cumplir con el mínimo de su sentencia, por lo que en comparación con otros confinados, no es razonable ofrecerle las terapias en este momento.

Estudiada la situación de hechos ante nuestra consideración, determinamos que la actuación de la agencia no fue arbitraria, ilegal, caprichosa o tan irrazonable que constituyó un abuso de discreción.[19] Por tanto, es forzoso concluir que el Foro Administrativo no cometió los errores señalados.

**-IV-**

Por todo lo anteriormente consignado, resolvemos **confirmar** la *Resolución* recurrida.

Lo acordó el Tribunal y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[19] *Mun. de San Juan v. CRIM*, 178 DPR 163, 175 (2010).